BARNES, J.,
for the Court:
¶ 1. On June 20, 2008, Lawanda Dillon pleaded guilty in the Lincoln County Circuit Court to manslaughter and was sentenced to twenty years in the custody of the Mississippi Department of Corrections (MDOC), with six years suspended and five years of post-release supervision. The circuit court denied Dillon’s subsequent motion for post-conviction relief, and she now appeals. Finding no error, we affirm.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. On November 17, 2006, Dillon was fighting with Boris Jackson, her boyfriend. This was not the couple’s first altercation; Jackson was frequently controlling and abusive toward Dillon. Jackson grabbed Dillon, choked her, and yelled at Dillon’s daughter. Jackson released Dillon, verbally threatened her, and shut himself in *1048 the bedroom. Dillon left her house and went to the nearest police station to obtain assistance. A police officer accompanied Dillon back home, but Jackson had already-left the home on foot to go to his sister’s house. Fearing that Jackson might return, Dillon put her three children, all from, prior relationships, into her vehicle and proceeded to leave the home. She claimed that she was on her way to her aunt’s house.
¶ 8. However, while driving down the road, Dillon encountered Jackson walking, and she stopped the car to talk to him. She claims that he threw a brick through the car’s window on the passenger side, causing the glass to shatter onto her daughter who was seated there.[1] As she drove away, Dillon hit Jackson with her ear and ran into a stop sign. Dillon then backed her car up and ran over Jackson a second time. She claimed that she never saw him. Yet a witness later told law enforcement that Dillon’s car came onto the grass where Jackson was walking and that Dillon’s actions looked deliberate. Another witness told the police that she heard a -window break and a voice say: “Go on, you have hit me one time.” A third witness saw Dillon’s car hit Jackson the second time, and the State claimed at the sentencing hearing that the witness would have testified that “it looked deliberate to her.” Dillon left the scene of the accident, and Jackson died as a result of his injuries. Dillon turned herself in to the police a few hours later.
¶ 4. On April 5, 2007, a Lincoln County grand jury indicted Dillon on a charge of murder. In response to a motion submitted by Dillon’s counsel, the circuit court ordered a psychiatric evaluation of Dillon on May 12, 2008. At a hearing on June 17, 2008, Dillon pleaded guilty to a lesser charge of manslaughter, and the indictment was amended to reflect this change. On June 20, 2008, a sentencing hearing was held, with testimony given on behalf of both Dillon and the victim, Jackson. The circuit court sentenced Dillon to twenty years in the custody of the MDOC, with six years suspended and five years of post-release supervision.
¶ 5. Dillon filed a motion for post-conviction relief on February 1, 2009, which the circuit court denied. She now appeals the denial of her motion. Finding no error, we affirm.
STANDARD OF REVIEW
¶ 6. We will not disturb a circuit court’s denial of a motion for post-conviction relief unless the court’s findings “are found to be clearly erroneous.” Jordan v. State, 21 So.Sd 697, 700 (¶ 6) (Miss.Ct.App.2009) (quoting Brown v. State, 731 So.2d 595, 598 (¶ 6) (Miss.1999)). “However, where questions of law are raised, the applicable standard of review is de novo.” Id.
I. Whether Dillon’s guilty plea was voluntarily and intelligently made.
¶ 7. A guilty plea is considered binding only if it is entered voluntarily and intelligently. Elliott v. State, 41 So.3d 701, 705 (¶ 11) (Miss.Ct.App.2009) (citing Myers v. State, 583 So.2d 174, 177 (Miss.1991)). In our determination of whether a guilty plea is voluntarily given, we look to whether “the defendant knows what the elements are of the charge against him including an understanding of the charge and its relation to him, what effect the plea will have, and what the possible sentence *1049 might be because of his plea.” Id. at 705 (¶ 11) (quoting Wilson v. State, 577 So.2d 394, 397 (Miss.1991)). However, if a guilty plea is “induced by fear, violence, deception, or improper inducements^]” it will not be considered voluntary. Wilbanks v. State, 14 So.3d 752, 755 (¶ 6) (Miss.Ct.App.2009) (quoting URCCC 8.04(A)(3)).
 ¶ 8. Dillon argues that facing the possibility of a life sentence if she went to trial on the charge of murder “destroyed [her] ability to think and balance the risk and benefits of going to trial.” Thus, she claims that her plea was not voluntarily or intelligently given. We find no merit to this argument. “While a defendant is free to collaterally attack a guilty plea, there is a strong presumption of validity to ‘solemn declarations made in open court.’ ” Id. (citing Hannah v. State, 943 So.2d 20, 25 (¶ 11) (Miss.2006)). At the plea hearing, the circuit court thoroughly explained to Dillon what rights she would be waiving and her possible sentence. Then, when asked if she understood the waiver of rights and possible sentence, Dillon said stated that she did. The circuit court also asked Dillon: “Has anyone threatened, abused, or promised you anything to cause you to want to plead guilty?” Dillon answered, “No, sir.” Thus, we find Dillon’s guilty plea was voluntarily and intelligently given.
II. Whether Dillon’s counsel rendered ineffective assistance.
¶ 9. In her claim for ineffective assistance of counsel, Dillon contends that her defense counsel conspired with the State to assist in securing a guilty plea by using a frivolous indictment for murder. Dillon states that her counsel should have objected to the indictment as “the evidence did not support murder or grounds to indict for such a crime.” Second, she claims that counsel’s failure to investigate and interview witnesses, who would have given mitigating circumstances that Dillon was acting in self-defense, was ineffective assistance. Finally, she argues that defense counsel should have submitted a motion for a competency hearing.
¶ 10. To succeed on an ineffective assistance of counsel claim, “a defendant must satisfy the two-pronged test established in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).” Davis v. State, 17 So.3d 1149, 1154 (¶25) (Miss.Ct.App.2009) (citing Stringer v. State, 627 So.2d 326, 328 (Miss.1993)). First, a defendant must show that his counsel’s performance was deficient; second, he must show that the deficient performance prejudiced his defense. Id. (citing McQuarter v. State, 574 So.2d 685, 687 (Miss.1990)). “In the case of a guilty plea, the second prong of prejudice is shown by proving that the ineffective assistance of counsel affected the outcome of the plea process.” Wilson v. State, 21 So.3d 572, 578 (¶ 16) (Miss.2009) (citing Hill v. Lockhart, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).
¶ 11. Nothing in the record indicates that the indictment against Dillon was frivolous and meant to coerce a guilty plea for manslaughter from Dillon. It is undisputed that Dillon ran over Jackson multiple times with her car, causing his death. There were witnesses available to testify at trial that Dillon’s actions were perceived to be deliberate. The State’s reason for agreeing to the lesser charge of manslaughter was not because the evidence did not support a murder charge; rather, it was because the State was concerned that a jury might be partial to Dillon due to the history of abuse that she had suffered from Jackson. At the sentencing hearing, Joey Norton with the District Attorney’s Office stated:
*1050 The concession to manslaughter in this case was made because of the extreme likelihood that a jury would be willing to excuse the defendant, at least partially, based upon the evidence of past physical abuse by Boris Jackson and the evidence that supported her claim that he had broken out her car window just a minute before she ran over him.
Therefore, we cannot find that defense counsel’s failure to object to the indictment constitutes deficient performance.
¶ 12. Next, Dillon claims that counsel did not sufficiently obtain testimony that would have presented the circuit court -with mitigating circumstances to her actions. She is referring to the testimonial statements given by her three children, which were submitted with her motion for post-conviction relief. In their statements, they reiterate Dillon’s claim that Jackson threw a brick at the car, shattering the window, and that she ran over Jackson “out of defense for herself and her children!.]”
¶ 13. A defense counsel’s failure “to interview potential witnesses and make an independent investigation of the facts and circumstances of a case” will not, by itself, “give rise to ineffective assistance of counsel.” Oliver v. State, 20 So.3d 16, 24 (¶ 23) (Miss.Ct.App.2009) (citing Reed v. State, 918 So.2d 776, 778 (¶ 5) (Miss.Ct.App.2005)). “[F]or an attorney’s ‘failure to investigate to rise to the level of ineffective assistance of counsel, the defendant must state with particularity what the investigation would have revealed and how it would have altered the outcome.’ ” Id. (citing Johnson v. State, 987 So.2d 501, 504 (¶ 15) (Miss.Ct.App.2008)). In other words, Dillon must show that she would not have entered her guilty plea except for the attorney’s alleged failure. She has not done so. Dillon claims that this testimony would have provided reasonable doubt for a jury. However, in a document entitled “Know Your Rights Before Pleading,” Dillon was asked: “Are you satisfied that the State can prove beyond a reasonable doubt that you are guilty of the crime or crimes to which you are pleading guilty?” Dillon answered affirmatively. The children’s testimonies do not demonstrate that Dillon did not commit the crime of manslaughter, for which she pleaded guilty. Thus, Dillon fails to show how counsel’s actions in not presenting this evidence resulted in any prejudice or how this testimony would have altered the outcome.
¶ 14. Finally, there was no evidence presented that Dillon was incompetent to enter a guilty plea. As we have already noted, Dillon’s guilty plea was given voluntarily and intelligently. Although we will discuss the matter of Dillon’s competence in greater detail in Issue IV, we find that counsel’s failure to file a motion for a competency hearing does not constitute ineffective assistance of counsel.
¶ 15. Dillon has not provided any evidence that defense counsel’s performance was deficient. When queried by the circuit judge, Dillon testified at the plea hearing that she was satisfied with her attorney’s services. Moreover, Dillon has not shown that, without the alleged deficient performance by counsel, the outcome would have been different. This issue is without merit.
III. Whether Dillon was deprived of due process by the circuit court’s failure to inform her of the right to appeal her sentence.
¶ 16. Under Mississippi Code Annotated section 99-35-101 (Rev.2007), a defendant may not directly appeal his guilty plea; but he “may pursue a direct appeal asserting the illegality of the sentence imposed pursuant to his guilty plea.” *1051 Oliver, 20 So.3d at 21 (¶ 12) (quoting Flowers v. State, 978 So.2d 1281, 1285 (¶ 11) (Miss.Ct.App.2008)).[2] Citing Trotter v. State, 554 So.2d 313 (Miss.1989), Dillon claims that the circuit judge was obligated to inform her that she had the right to appeal her sentence. However, this Court has clarified that a circuit court “is not required to inform a defendant who pleads guilty of his right to appeal the resultant sentence.” Cook v. State, 990 So.2d 788, 793 (¶ 11) (Miss.Ct.App.2008) (citing Coleman v. State, 979 So.2d 731, 733 (¶ 6) (Miss.Ct.App.2008)). Therefore, although the circuit judge did not mention Dillon’s right to appeal her conviction and sentence at trial, we cannot find this constitutes reversible error. This issue is without merit.
IV. Whether the circuit court denied Dillon due process by failing to conduct a competency hearing pursuant to Rule 9.06.
¶ 17. Dillon claims that the circuit court had a duty to conduct an eviden-tiary hearing regarding her mental and emotional well-being, prior to accepting her guilty plea. Rule 9.06 of the Uniform Rules of Circuit and County Court provides that:
If before or during trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination by some competent psychiatrist selected by the court in accordance with § 99-13-11 of the Mississippi Code Annotated of 1972.
(Emphasis added). As this Court has noted, Rule 9.06 is also applicable “to a defendant’s entry of a guilty plea.” Smith v. State, 831 So.2d 590, 593 (¶ 11) (Miss.Ct.App.2002). Although she admits that the circuit court ordered an independent psychiatric evaluation by Dr. Christopher Lott, Dillon contends that the results of that evaluation were not sufficient.
¶ 18. “The standard of competency necessary to enter a plea of guilty is the same as that for determining competency to stand trial.” Id. (quoting Page v. State, 812 So.2d 1039, 1041 (¶ 6) (Miss.Ct.App.2001)). The key phrase in Rule 9.06 in determining whether a competency hearing is required is “reasonable ground to believe that the defendant is incompetent.” The circuit judge is in the best position view the evidence and to “observe[ ] the demeanor and behavior of the defendant.” Id. (quoting Richardson v. State, 722 So.2d 481, 486 (¶24) (Miss.1998)).
¶ 19. Dillon offered no evidence at her plea hearing that she was incompetent. The circuit judge asked Dillon if she understood the rights that she was waiving and her possible sentence; Dillon stated that she understood. Furthermore, at the sentencing hearing, Dr. Lott testified on Dillon’s behalf and stated that Dillon “was very calm and collected” during his evaluation and that he did not “see anything that would suggest that she has a major mental disorder.” The circuit court specifically asked Dr. Lott if Dillon was considered sane under the M’Naughten test, and Dr. Lott answered affirmatively. He stated that Dillon had no problem distinguishing between right and wrong. Additionally, a *1052 separate evaluation by Dillon’s expert, Dr. Keith Caruso, was submitted for the record immediately prior to Dillon’s plea hearing. In that report, Dr. Caruso said that:
Ms. Dillon was evaluated for competency to stand trial previously by Dr. Christopher Lott, a psychologist. She was deemed competent to stand trial. She has never been on psychotropic medication or in psychotherapy. She has no history of suicide attempts or psychosis.
Accordingly, we find no error in the circuit court’s failure to conduct a formal competency hearing as there was no “reasonable ground” presented that Dillon was incompetent to enter her guilty plea. This issue is without merit.
Y. Whether the circuit court erred in accepting Dillon’s Alford plea.
¶ 20. At the plea hearing, Dillon entered an Alford guilty plea as she contended that she could not remember the events leading up to Jackson’s murder. An “Alford plea,” also known as a “best-interest” guilty plea, is based on the United States Supreme Court’s decision in North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). In that case, Henry Alford pleaded guilty to a lesser charge of second-degree murder, rather than face the possibility of the death penalty if he went to trial on a first-degree-murder charge. Id. at 26-37, 91 S.Ct. 160. The Supreme Court held that, although Alford continually denied committing the murder, he “intelligently conclude[d] that his interests require[d] entry of a guilty plea and the record before the judge contain[ed] strong evidence of actual guilt.” Id. at 37, 91 S.Ct. 160.
¶ 21. Dillon claims that she received no favorable outcome by pleading guilty, assuming that the charge at trial would also be manslaughter. However, the indictment was amended only after Dillon agreed to plead guilty to manslaughter. There is no evidence that the State would not have pursued the murder charge had Dillon not pleaded guilty. The sentence for murder is life imprisonment. See Miss. Code Ann. § 97-3-21 (Rev.2006). Furthermore, there was strong evidence of Dillon’s guilt; it was undisputed that she ran over Jackson with her car more than once, killing him. Thus, we cannot agree with Dillon’s assertion that she was “factually innocent.”
¶ 22. We find that the circuit court, in questioning Dillon and her defense counsel, sufficiently ascertained that Dillon entered her Alford plea with a full understanding that it was in her best interest to do so.
BY THE COURT: I understand. For the record, this plea is being rendered pursuant to Alford v. North Carolina. It is my understanding that it is the Defendant’s contention that she does not remember the series of events.
BY MS. OWEN: Correct.
BY THE COURT: Have you reviewed the State’s discovery material with your attorney?
BY MS. DILLON: Yes, sir.
BY THE COURT: Based upon the evidence that the State of Mississippi has and all that you’ve seen and heard in this case, do you believe that it is in your best interest to enter a guilty plea to the offense of manslaughter at this time?
BY MS. DILLON: Yes, sir.
BY THE COURT: And that’s pursuant to Alford v. North Carolina, is that correct, Ms. Owen?
BY MS OWEN: Yes, sir.
BY THE COURT: And are you satisfied that you’ve had enough time to discuss Alford v. North Carolina with *1053 your client, explain to her the law as set forth by the U.S. Supreme Court in that case?
BY MS. OWEN: Yes.
BY THE COURT: Are you satisfied that if your case went to trial that the State could prove beyond a reasonable doubt that you’re guilty of the crime to which you’re pleading guilty?
BY MS. DILLON: Yes, sir.
[[Image here]]
BY THE COURT: The Court finds that Lawanda Dillon has knowingly, willingly, freely, voluntarily, and intelligently entered her guilty plea pursuant to Alford v. North Carolina; that there exists a factual basis for the plea....
We find this issue is without merit.
VI. Whether cumulative error requires the reversal of Dillon’s conviction and sentence.
¶ 23. Having found no individual errors in the specific issues raised by Dillon, we cannot find that cumulative error exists. As the circuit court’s findings were not “clearly erroneous,” we affirm the denial of Dillon’s motion for post-conviction relief.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF LINCOLN COUNTY DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LINCOLN COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.

. Later testimony by law enforcement was that no brick was found near the scene of the accident. However, it was confirmed that the car's window on the passenger side had been shattered.

. This statute was amended on July 1, 2008, to provide that a defendant who enters a guilty plea and is sentenced shall not be allowed a direct appeal "from the circuit court to the Supreme Court[.]” Miss.Code Ann. § 99-35-101 (Supp.2008). However, as Dillon entered her plea and was sentenced prior to the amendment, the revised statute is not applicable.